419 So.2d 178 (1982)
Gary KREBS, a Minor, By and Through His Father and Next Friend, Joseph V. Krebs, Jr. and United States Fidelity and Guaranty Insurance Company
v.
Elise G. STRANGE; W.E. Strange, II, a Minor, By and Through His Mother and Next Friend Elise G. Strange; Carol Strange Durham; and Deddy Strange Burkhead.
No. 53396.
Supreme Court of Mississippi.
September 1, 1982.
Rehearing Denied September 22, 1982.
*179 Megehee, Brown, Williams & Mestayer, Raymond L. Brown, Pascagoula, for appellants.
*180 Cumbest, Cumbest & Hunter, John L. Hunter, David O. McCormick, Pascagoula, for appellees.
Before WALKER, P.J., and BROOM and ROY NOBLE LEE, JJ.
BROOM, Justice, for the Court:
Certified to this Court by the United States Court of Appeals for the Fifth Circuit, 658 F.2d 268, are questions which arise out of a garnishment proceeding brought in the United States District Court for the Southern District of Mississippi, (being Federal Cause Numbered 80-3594), by the appellees, Elise G. Strange, et al., against United States Fidelity and Guaranty Company (USF&G), and Gary Krebs. Disclaiming coverage of appellant Krebs by virtue of an exclusionary endorsement in the policy covering the automobile, USF&G appealed from an adverse judgment of the United States District Court to the Fifth Circuit Court of Appeals. The United States Court of Appeals for the Fifth Circuit perceived this diversity action as centering around issues of contract and insurance law which were deemed unsettled in Mississippi jurisprudence. Therefore, the Fifth Circuit Court availed itself of the certification procedures to the Supreme Court of Mississippi set out in Mississippi Supreme Court Rule No. 46.
The following questions were certified to the Supreme Court of Mississippi by the United States Court of Appeals for the Fifth Circuit:
1. Does forbearance to cancel an insurance policy on renewal date constitute a valid consideration for an endorsement to the policy?
2. Was there valid consideration for the student exclusion (student risk) endorsement to the McLeod automobile liability insurance policy?
3. Was the endorsement contrary to the Mississippi Motor Vehicle Safety Responsibility Act or public policy, or ambiguous or contrary to the Omnibus Clause of the policy?
It should be noted that if the first and second questions are answered in the negative, the third question becomes moot.
On September 29, 1973, an accident occurred on Highway 6, between Batesville and Oxford, Mississippi, about 15 miles west of Oxford, in college football traffic. A 1972 Chevrolet Monte Carlo automobile, owned by W.F. McLeod and driven by Gary Krebs, with McLeod's daughter, Dorothy Lou, as a passenger, struck the rear of an automobile driven by William Ernest Strange, age 66. Later, at the game, Strange was stricken and taken to the Oxford Hospital, where he died of cardiac arrythmia.
McLeod owned an automobile insurance policy on the Monte Carlo, with such policy period running from September 7, 1973, to September 7, 1974. This policy included a "student exclusion" endorsement which had been added to the policy on December 4, 1972, during the preceding policy period. When this endorsement was added, in December of 1972, there was no rate change or adjustment of premium related to the endorsement.
The addition of the "student exclusion" endorsement was occasioned by Mr. McLeod's purchase of the 1972 Monte Carlo for use by his daughter at the University of Southern Mississippi. Near Christmas of 1972, in accordance with the requirements of the insurance policy, Mr. McLeod notified his insurance agent of the purchase of the automobile, and was informed of the corresponding additional premium for addition of the vehicle. When the agent was informed as to the intended purpose of the automobile, he advised Mr. McLeod that he would be required to sign the student exclusion endorsement or else the insurance policy would be terminated upon its next anniversary date. Verbatim language of the stipulation is:
McLeod was familiar with "student exclusion" endorsements, having had one on his policy when his older daughter was in school, and, also, he was informed by the agent in December, 1972, and McLeod understood, that his coverage would be *181 terminated or not renewed on its anniversary date (September 7, 1973) if he failed to sign and accept the "student exclusion" endorsement.
Most significantly, absent from the stipulation of the litigants is any commitment on the part of USF&G or its agent that the policy would not be terminated, or that it would be renewed.[1] Mr. McLeod signed the endorsement.
The "student exclusion" endorsement provided that USF&G would not provide automobile insurance liability coverage to any automobile owned by Mr. McLeod which was being operated by "any student enrolled in any school, college or university," with the exception of Mr. McLeod's daughter, Dorothy Lou. At the time of the accident on September 29, 1973, Gary Krebs was operating the automobile in question. At that time, he was enrolled as a student in the University of Southern Mississippi. He and Dorothy Lou McLeod, the insured's daughter, were en route from Hattiesburg to the Ole Miss  Southern ball game in Oxford, Mississippi.
In August of 1974, a suit was filed against Gary Krebs, his insurance carrier, Allstate Insurance Company, and USF&G. USF&G declined to furnish a defense and declined coverage for Krebs under McLeod's policy on the grounds of the "student exclusion" endorsement. Krebs was defended by Allstate, which settled the case for Krebs for $5,000 of its $10,000 coverage. A covenant not to prosecute the claim against Krebs was executed and a default judgment was entered against Krebs for $100,000. The garnishment proceeding instituted in the United States District Court for the Southern District of Mississippi is based upon the $100,000 default judgment entered against Gary Krebs in cause # 9195 in Jackson County Circuit Court. Jurisdiction in the garnishment proceeding was based upon diversity pursuant to 28 U.S.C. § 1332 (1976), and was submitted to the District Court by agreement of the parties on a stipulation of testimony and evidence and memorandum briefs.
The District Court held for Mrs. Strange, et al., holding that the addition of the "student exclusion" endorsement was not supported by consideration, and hence never became a part of the policy of insurance.
The first issue we must decide is whether the "student exclusion" signed by Mr. McLeod was in force at the time of the accident between Gary Krebs and William Strange. The exclusion could have become a part of the insurance policy issued to Mr. McLeod at one of two times: (1) at the time of Mr. McLeod's agreement to sign the endorsement (pursuant to the modification procedures expressed in the terms of the contract), or (2) on September 7, 1973, when the contract itself was renewed.
We begin with the proposition which requires no citation of authority that insurance policies are matters of contract and the interpretation of insurance contracts is according to the same rules which govern other contracts. In order to have an enforceable insurance contract, the essential elements are an offer and an acceptance, supported by consideration. When the insurance company's offer to issue the insurance is accepted by the insured and premium payment is made, the contract is formed and the rights and obligations of the respective parties "lock in". The rights under the policy may be altered only through a modification to the insurance policy, and such a modification constitutes a *182 new agreement which must likewise be supported by a consideration. United States Fidelity and Guaranty Company v. Mathis, 236 So.2d 730, 732 (Miss. 1970).
In the instant case, Mr. McLeod purchased a new car in December, 1972, and pursuant to the terms of his policy, he notified his agent of the purchase so as to include the new car under the policy's coverage. In accordance with the original terms of the policy, USF&G was entitled to an additional premium for the newly purchased car, which they received, but the parties agree that the addition of the "student exclusion" did not affect the premium rate. The agent then informed Mr. McLeod that he was required to sign the "student exclusion" endorsement or face automatic termination at the end of the policy period. This endorsement constituted an alteration in the terms of the original policy as it excluded coverage from a sizable number of potential drivers. USF&G readily admits that the increased premium to cover the additional vehicle did not include any reduction in premium as consideration for Mr. McLeod's new reduced coverage (student exclusion endorsement). In order to constitute a valid modification, USF&G must have suffered some form of concurrent legal detriment, whether in the form of present performance (or forbearance) of an act, or a promise of such in the future. USF&G contends that had Mr. McLeod refused to sign the "student exclusion" endorsement, they would have automatically terminated the policy at the end of the policy period. It is important to note that USF&G had the right to terminate the policy immediately only upon the occurrence of one of the conditions specified in paragraph 17 of the policy. Inasmuch as none of those conditions had occurred, USF&G was bound to provide coverage, pursuant to the terms of the insurance policy between itself and Mr. McLeod, until the end of the policy period on September 7, 1973. USF&G contends that the forbearance of an automatic termination of the policy at the end of the policy period constituted consideration for the modification to the policy. We disagree and hold that such forbearance was not such a valid consideration.
When the period of an insurance policy expires, then in the absence of specific language to the contrary, the contract between the parties terminates. When termination of the contract occurs, the insurance company has nothing to cancel and there is no legal right or privilege as to that contract which the insurance company may forbear and for which such forbearance may serve as consideration for a modification. The only right that the insured or the insuror possesses at the termination of such an insurance policy is the right to make an offer or to decline an offer to enter into a new insurance contract by means of either a new insurance policy, or by means of an agreement to renew the previously existing policy. In substance, USF&G was saying to Mr. McLeod when they proposed the modification (student exclusion endorsement) of the insurance policy: "If you don't agree to this modification, then upon the termination of the present insurance contract we will not make an offer to renew the insurance policy. On the other hand, if you agree to this modification, then we may or we may not make an offer to renew this insurance policy." When cast in such language, the insurance company's "promise" is clearly illusory. In his work on Contracts, Professor Corbin dealt with the subject of illusory promises as consideration:
If what appears to be a promise is an illusion, there is no promise; like the mirage of the desert with its vision of flowing water which yet lets the traveller die of thirst, there is nothing there. By the phrase "illusory promise" is meant words in promissory form that promise nothing; they do not purport to put any limitation on the freedom of the alleged promisor, but leave his future action subject to his own future will, just as it would have been had he said no words at all.
If A asks B to promise some future performance and B makes no answer, B has made no promise. This is true, even though when the future time arrives B may then be willing to perform as requested and may actually so perform. If, *183 under these circumstances, A thinks that B has made a promise, he is under an illusion. The same is true if instead of making no answer B had replied, "I predict that when the time comes I shall be willing to do what you ask." A prediction of future willingness is not an expression of present willingness and is not a promise. To see a promise in it is to be under an illusion. We reach the same result if B's reply to A is, "I promise to do as you ask if I please to do so when the time arrives." In form this is a conditional promise, but the condition is the pleasure or future will of the promisor himself. The words used do not purport to effect any limitation upon the promisor's future freedom of choice. They do not lead the promisee to have an expectation of performance because of a present expression of will. He may hope that a future willingness will exist; but he has no more reasonable basis for such a hope than if B had merely made a prediction or had said nothing at all. As a promise, B's words are mere illusion. Such an illusory promise is neither enforceable against the one making it, nor is it operative as a consideration for a return promise.
Corbin, Contracts, § 145 at p. 211 (1 Vol. Ed. 1952).
With regard to the subject of consideration, it is important to note the distinction between an illusory promise and actual forbearance. Appellant USF&G points to the case of United States Fidelity and Guaranty Company v. Mathis, supra, as an example of where this Court has explicitly recognized that forbearance, even when implied as opposed to being expressly agreed upon by the parties, is sufficient as consideration. USF&G's reliance upon the cited case is misplaced. In Mathis, the insurance company had the right upon the occurrence of Jerry Mathis' third accident, to an immediate cancellation of the insurance policy. This was their legal right. At this point they made an offer to the insured that if he would sign an endorsement excluding coverage for Jerry Mathis, the policy would be continued at a reduced premium. When the renewal policy was sent to John Mathis, this endorsement was inadvertently left off. Nonetheless, the premium reflected the reduced rates resulting from the endorsement excluding coverage on Jerry Mathis. Likewise, upon discovery of such omission, the insurance company immediately took steps to correct the omission. It was upon the totality of the surrounding circumstances that we found an implied promise to forbear cancellation. In the instant case there are no such surrounding circumstances.
In actuality, the insurance company was making a promise not to offer to renew the insurance contract upon the termination of the present policy. This promise existed as a nudum pactum and hence was unenforceable and could not constitute consideration. We must, therefore, conclude that the "student exclusion" endorsement signed by Mr. McLeod in December of 1972 was void for lack of consideration.
Although the modification adding the "student exclusion" endorsement was void at the time of its signing by Mr. McLeod, one may ask whether, upon the subsequent renewal of the insurance policy on September 7, 1973, for new consideration, the endorsement was included as one of the terms of the new contract. This proposition was not specifically included in the questions certified to this Court, nor was it briefed or argued by the appellants, who conceded the point at oral argument.
Our answers to questions numbered (1) and (2) as submitted to us by the United States Court for the Fifth Circuit are both in the negative, as qualified by the foregoing discussion. These answers are dispositive of the cause, and therefore we do not deem it appropriate to deal with question numbered (3) certified to us.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE, and PRATHER, JJ., concur.
NOTES
[1] This is contrary to the statement in appellant's brief at page 6 which makes the unsupported assertion that there was "... an agreement not to terminate coverage, to renew coverage, on anniversary date... ."

Our careful search of the stipulations of facts and testimony fails to reveal any promise or agreement on the part of USF&G, or its agent, when the agent obtained policyholder McLeod's assent to the addition of the student exclusion endorsement to the policy. Neither of the litigants' briefs refer to any place where such a promise may be found.
Interestingly enough, there is found in the Memorandum Opinion of United States District Judge Nixon, a reference to the defendant's (USF&G) "promise not to cancel the policy... ." Of course, we are bound to consider only testimony found within the stipulations submitted to this Court.