431 So.2d 1123 (1983)
BANKERS AND SHIPPERS INSURANCE COMPANY OF NEW YORK
v.
MERIDIAN NAVAL FEDERAL CREDIT UNION.
No. 53796.
Supreme Court of Mississippi.
June 1, 1983.
*1124 Wilbourn & Rogers and Don O. Rogers, Meridian, for appellant.
Bourdeaux & Jones, William C. Hammack and E. Gregory Snowden, Meridian, for appellee.
Before BROOM, HAWKINS and DAN M. LEE, JJ.
HAWKINS, Justice, for the Court:
Bankers and Shippers Insurance Company of New York, an insurance corporation of that state, appeals from a Lauderdale County Circuit Court judgment in favor of Meridian Naval Federal Credit Union, a Mississippi corporation.
The issue we address on this appeal is whether the insurance company was obligated to give notice to the credit union of the lapse of an insurance policy for nonpayment of a renewal premium by a borrower from the credit union on a mobile home, secured by a security agreement in favor of the credit union. We agree with the circuit judge that there was such a duty, and in failing to give the notice the insurance policy, as to the credit union, was in effect at the time of the fire which destroyed the trailer. We affirm.

FACTS
On April 19, 1977, James F. Tyree and his wife, Ann M. Tyree, were indebted to Meridian Naval Federal Credit Union (credit union). The debt was evidenced by a promissory note executed by the Tyrees, and secured by a security agreement on a mobile home owned by Mrs. Tyree.[1] On that date, Mrs. Tyree secured a hazard insurance policy from the agent of Bankers and Shippers Insurance Company of New York (insurance company). The credit union was shown as a lender in the policy, with loss payable to it to the extent of its interest.
The policy was for a one year period, expiring April 19, 1978. On March 22, 1978, the local agent of the insurance company mailed Mrs. Tyree a notice that the policy would expire April 18, 1978, unless renewed. Another notice was mailed to Mrs. Tyree on April 14, 1978, that the policy would lapse unless renewed. No notice of any kind was given the credit union. Mrs. Tyree, who had by that time sold her mobile home to a third party, did not pay any renewal premium, and the policy by its terms lapsed as to her.
On May 3, 1978, the trailer was totally destroyed by fire. At that time the principal sum of $4,975.88 was due by Mr. and Mrs. Tyree on their note to the credit union.
The credit union filed suit in the Circuit Court of Lauderdale County under the policy, alleging that the insurance company had a duty under Mississippi Code Annotated section 83-13-9 (1972), and the terms of the policy, to give it written notice of the policy termination, and because of this failure to notify, the policy was in effect. The insurance company's defense was that there was *1125 no duty to notify the credit union, the policy lapsing by its own express terms upon the nonpayment of a renewal premium, and thus there was not a cancellation within the meaning of the statute or terms of the policy.
There was a non-jury trial, and the circuit judge, relying primarily on our recent case of National Security Fire & Casualty Co. v. Mid-State Homes, Inc., 370 So.2d 1351 (Miss. 1979), agreed with the credit union, found that the insurance company had violated the duty to notify the credit union, and the policy was, as to the credit union, in full force and effect. Judgment for the amount of the debt was rendered in favor of the credit union.

LAW
On this appeal the insurance company seeks to distinguish Mid-State Homes from the present case by arguing that in that case the policy was a "continuous policy," while in this case the contract was for one year only. Our opinion stated:
The fire insurance policy involved in this case is a continuous policy subject to the payment of the premium specified and contains the following provision:
In consideration of the provisions and stipulations herein, or added hereto, and of the premium above specified, this company, for the term of one year beginning at noon of the date hereof to noon, of the following yearly date, standard time, at the location of the property insured, and continuously thereafter from year to year, for each succeeding year for which the premium is paid in advance, ...
Under the terms of the quoted provision the policy is automatically cancelled for nonpayment of each annual premium; however, the provision conflicts with the ten day notice requirement of the statute and is ineffective to a mortgagee, but is effective to a mortgagor or owner of the property.
Id. at 1354.
We then concluded:
After the premium was not paid by the mortgagor on May 16, 1974, National Security should have demanded payment of the premium by the mortgagee, Mid-State, or if it desired to cancel the policy for nonpayment of the premium, ten days notice of such intent should have been given to Mid-State who could have paid the premium within the ten day period.
Id. at 1354-55.
The insurance company here argues that the failure of its policy to have any specific provision that it would run "continuously" thereafter from year to year for which the premium was paid in advance made this a one year contract, upon the expiration of which all duty it had thereunder to all parties expired.
This contention misses the economic facts of life of the insurance industry, the terms of the policy in this case, and the clear intention of the insurance company itself to renew the policy. Such contention also fails to grasp the thrust of our holding in Mid-State Homes.
It would seem self-evident that all insurance policies, with the exception of those covering a specific event which will terminate at some point in time,[2] contemplate periodic renewals. Indeed, it is the renewal of insurance contracts which insurance companies must rely upon to stay in business. The insurance company in Mid-State Homes had no more right against a home owner for nonpayment of premiums than in this case. Under either policy, as to the home owner, the policy lapsed upon the nonpayment of the renewal premium.
This economic fact of life was recognized in the insurance policy itself, which stated:
NONRENEWAL OF THE POLICY.
If this Company elects not to renew this policy, it shall mail to the Insured written notice of such nonrenewal, not less than thirty days prior to the expiration date; provided that, notwithstanding the failure of this Company to comply with the foregoing provisions of this paragraph, *1126 this policy shall terminate automatically on such expiration date, if the Named Insured has failed to pay the premium for this policy or any installment thereof, ...
Finally, this economic fact of life of the insurance industry  the continuation of insurance contracts  was recognized by the insurance company when its agent wrote the homeowner twice about renewing the policy.
There is really no distinction, and certainly no practical difference, between the obligation of the insurance company to the lender in this case and the insurance carrier in Mid-State Homes.
In Mid-State Homes we made it quite clear that in circumstances such as set forth in this case, the insurance carrier has an absolute duty by statute to notify the lienholder that the policy will terminate unless the renewal premium is paid. We gave the history of the statute and the reasons for such holding in Mid-State Homes and there is no need to repeat them here.
Even in the absence of a statute in this case, the insurance company would have had the same obligations created by statute, because the policy itself contained essentially the same language as the statute.
While prudence would indicate that lending institutions keep an accurate file calling their attention to the expiration date on insurance policies, this does not, under our statute, relieve an insurance company of the obligation to notify a lienholder named in the policy.
Based on the foregoing, the decision of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
NOTES
[1] Since the trailer was personal property, it was secured by a security agreement, rather than a deed of trust.
[2] For example, the safe passage of a ship's cargo or the performance of an entertainer.