733 So.2d 863 (1999)
SCOTTSDALE INSURANCE COMPANY, Appellant,
v.
DEPOSIT GUARANTY NATIONAL BANK, Appellee.
No. 96-CA-01394 COA.
Court of Appeals of Mississippi.
January 26, 1999.
*864 Richard M. Edmonson, Craig D. Smith, Jackson, Attorneys for Appellant.
Robert L. Wells, Chad J. Hammons, Jackson, Attorneys for Appellee.
BEFORE McMILLIN, P.J., COLEMAN, and SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. Deposit Guaranty National Bank was the mortgagee and loss payee under a binder providing builder's risk insurance on a home purchased by JoAnn Jenkins. After the expiration date of the binder the home was destroyed by a tornado. The insurer, Scottsdale Insurance Company, refused to pay because the loss occurred after the binder terminated. Since it had not received notice of cancellation, Deposit Guaranty brought suit against Scottsdale. Summary judgment was entered in favor of Deposit Guaranty on the issue of liability. A bench trial as to damages resulted in an award to the bank of $28,000 under a formula set forth in the policy. Scottsdale appeals the grant of summary judgment as to liability but raises no separate issue as to amount of damages. We affirm.

FACTS
¶ 2. In 1988 JoAnn Jenkins purchased a house located on Old Canton Road in Jackson that had been built in the 1960's for former Mississippi Governor Ross Barnett. As part of the purchase, she was required to move the house. She placed it on land adjacent to Highway 49 north of Jackson. Jenkins obtained a construction and renovation loan from Deposit Guaranty National Bank. She also applied for builder's risk insurance with Statewide Insurance Company. A binder in the amount of $100,000 was subsequently issued by Scottsdale through its agent, Statewide. The binder was to provide coverage from July 25, 1988, through January 25, 1989. Deposit Guaranty National Bank was listed as the mortgagee and loss payee on the binder.
¶ 3. Pursuant to the binder, a policy was later issued which covered the property from July 25, 1988 through October 25, 1988.[1] Deposit Guaranty was not listed as *865 either the mortgagee or loss payee on the policy. On March 2, 1989, a Deposit Guaranty loan officer circulated a memo indicating that coverage had lapsed under the policy. He then procured $26,000 in replacement coverage through the bank's blanket insurance provider, Whitehall Insurance Brokers, Inc. On March 4, the second floor of the home was destroyed by a tornado. At the time of the loss, Jenkins's loan had been in default for two months.
¶ 4. Jenkins notified Scottsdale of the loss. It refused to pay because the loss occurred after the expiration date of the policy. Deposit Guaranty filed suit against Statewide and Scottsdale, alleging that they had failed to comply with a statutory requirement that at least ten days notice be given a mortgagee before an insurance policy is canceled. Statewide's motion for summary judgment was granted; Scottsdale's motion was denied. Summary judgment was entered in Deposit Guaranty's favor as to Scottsdale's liability, though the bank had not filed a summary judgment motion. Following a bench trial on damages, Deposit Guaranty was awarded $28,000.

DISCUSSION
¶ 5. The Court employs a de novo standard of review to a lower court's grant of summary judgment. Rockwell v. Preferred Risk Mutual Insurance Co., 710 So.2d 388, 389 (Miss.1998). Summary judgment is appropriate if the evidence before the Courtadmissions in the pleadings, answers to interrogatories, depositions, affidavits, etc.shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Id.

I. Notice required under section 83-13-9
¶ 6. At the time of the issuance of the binder, this statutory language was in effect:
Each fire insurance policy on buildings taken out by a mortgagor or grantor in a deed of trust shall have attached or shall contain substantially the following mortgagee clause, viz: ... This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this company shall have the right on like notice to cancel this agreement.
Miss.Code Ann. § 83-13-9 (1972) (emphasis added).[2]
¶ 7. Scottsdale argues that it was not required to provide Deposit Guaranty with notice because no renewal of the policy was contemplated by either party. Scottsdale maintains that a builder's risk policy is obtained for a specific purpose and, as a result, the policy expired under its own terms on January 25, 1989. On this point, both parties discuss a supreme court case that stated that "all insurance policies, with the exception of those covering a specific event which will terminate at some point in time, contemplate periodic renewal." Bankers & Shippers Ins. v. Meridian Naval Fed. Credit Union, 431 So.2d 1123, 1125 (Miss.1983). Scottsdale argues that a construction project is such a "special event." The examples cited by the court in Meridian Naval were policies insuring "the safe passage of a ship's cargo or the performance of an entertainer." Id. at n. 2.
¶ 8. To consider the merits of Scottsdale's argument, we note that a "builder's risk policy ordinarily indemnifies a builder or contractor against the loss of, or damage to, a building he or she is in the *866 process of constructing...." COUCH ON INSURANCE, § 1.53 (3d ed.1995). It is for the process and during the period of construction that insurance is required. The expiration date given in a builder's risk policy is an initial forecast of when the construction will be completed. The event, special or otherwise under Meridian Naval, is the "process of constructing." However, insurance is still needed until the date that construction is in fact complete and a permanent policy has been issued. Thus there is every reason for notice to be given to the mortgagee. Here none was given. Therefore, absent other factors the coverage remained in effect as to the mortgagee.
¶ 9. Another consideration raised by Scottsdale is that two days before the tornado Deposit Guaranty discovered that the coverage had expired. The trial court found that "this still does not relieve Scottsdale of the obligation to give notice of cancellation, as required by Section 83-13-9." The statute does not mention actual notice as an exception to the requirement that the insurer give notice. "The purpose of the union or standard mortgage clause is to protect the mortgagee from loss occurring after the mortgagor or owner has caused a lapse in insurance coverage." Carter v. Allstate Indemnity Co., 592 So.2d 66, 71 (Miss.1991). Actual notice by the mortgagee after the expiration of the policy does not prevent a lapse in coverage. Only the notice demanded by the statute operates fully to protect the mortgagee.
¶ 10. Scottsdale's point is, even accepting liability until another policy is acquired, that liability ended before the tornado struck. Scottsdale argues that by procuring coverage under its own blanket policy, Deposit Guaranty in effect canceled the earlier policy. In the one case that is presented in support of these arguments, the property owner procured a new policy after the initial policy was canceled; the mortgagee was not sent notice. Carter v. Allstate Indemnity Co., 592 So.2d 66, 71 (Miss.1991). The bank also was not provided a copy of the new policy but was told about it. After a loss and a claim being filed with the new insurer, a check for the policy limits was provided to the bank and the debtor as joint payees. The bank released the entire money to the debtor in return for receiving payment on all of the debtor's outstanding loans. Id. Even so, the bank sought recovery also from the first insurer. On these facts, the court denied the claim since allowing the mortgagee to recover from the first insurer would "essentially mean permitting double recovery." Id. at 73.
¶ 11. Carter holds that when the home-owner-mortgagor obtains a new policy, and the lender-mortgagee accepts payment from that second insurer, the first insurer who has not complied with the notice statute may be released from liability. In contrast, here the mortgagee turned to its umbrella policy. If an umbrella or similar coverage is called upon, the lender may significantly increase its costs due to the nature of the premiums or other details of the coverage. Such coverage is a precaution, not a replacement for another's insurance obligations.
¶ 12. Perhaps even more importantly, here the loss occurred just two days after the mortgagee learned of the termination of insurance. The statute provided that the canceled policy must "continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation...." Miss.Code Ann. § 83-13-9 (1972). It would be anomalous indeed that the policy would have continued for ten days after proper notice being given, but expired immediately when the mortgagee never received proper notice but learned through other means. The ten days permits the mortgagee to work with the debtor and determine the proper corrective action. The statute did not say that the canceled policy continued "for ten days or until separate insurance is acquired, whichever is sooner." Thus at a minimum *867 for ten days after Deposit Guaranty learned of the termination, Scottsdale's obligations continued.
¶ 13. Even when there is separate insurance, the statute provides that the mortgage clause shall provide that the canceling insurer "shall not be liable under this policy for a greater portion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property. ...." Miss. Code Ann. § 83-13-9 (Rev.1991). This becomes an issue only in assessing damage for the cancellation without notice but does not extinguish liability. No issue is raised on appeal regarding the determination at trial of the amount of damages owed. The only question is liability. The clause continues liability for the insurer who cancels without notice.
¶ 14. We hold that the plain language of the statute continues the liability of the initial insurer until it provides notice to the mortgagee. If the lender learns in other ways and itself obtains separate coverage, this does not by itself end the insurer's liability for its default.

II. Propriety of summary judgment to non-moving party
¶ 15. Scottsdale filed a motion for summary judgment to which Deposit Guaranty filed no cross-motion. Following a hearing on the motion, the trial judge entered summary judgment in favor of Deposit Guaranty as to liability. Scottsdale now argues that it was error to grant summary judgment to a party who failed to request it.
¶ 16. "The grant of [summary] judgment for the nonmoving party clearly is proper if both sides agree that there are no material fact issues and join in the request that the case be decided, for the moving or the nonmoving side, on the basis of a motion for judgment made by only one of them." 10A WRIGHT ET. AL., FEDERAL PRACTICE AND PROCEDURE, § 2720 (2d ed.1983). Some courts have held that a motion must made before summary judgment may be entered in a party's favor. Sohappy v. Hodel, 911 F.2d 1312, 1320 (9th Cir.1990); Hailey v. Hailey, 621 F.2d 169, 172 (5th Cir.1980). However, "the weight of authority is that summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under rule 56." WRIGHT, § 2720, cited in Galindo v. Precision American Corp., 754 F.2d 1212, 1216 (5th Cir.1985).
¶ 17. Among the reasons cited for this result is that "[i]t is in keeping with the objective of Rule 56 to expedite the disposition of cases and, somewhat more remotely, with the mandate of Rule 54(c) requiring the court to grant the relief to which a party is entitled `even if the party has not demanded such relief in his pleadings.'" WRIGHT, § 2720. The supreme court has relied on this same treatise section to say that "We have held that each party by filing a motion for summary judgment has consented to the enforceability of Rule 56 in this case." Brown v. Credit Center, Inc., 444 So.2d 358, 363 (Miss. 1983). Thus even without a motion by Deposit Guaranty, Scottsdale consented to the case being resolved on motion if no genuine issues of material fact exist.
¶ 18. Here the parties submitted a "Stipulation of Fact and Waiver of Jury Trial." All that remained was a determination of the legal effect of those facts. The trial judge correctly found that Deposit Guaranty was entitled to judgment as a matter of law.
¶ 19. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., COLEMAN, DIAZ, KING, and PAYNE, JJ., CONCUR.
IRVING and LEE, JJ., NOT PARTICIPATING.
NOTES
[1] A Statewide agent testified that a six month policy was requested. However, for some reason, a policy covering a three month period was issued instead. She stated that she was informed that the policy could be rewritten upon expiration if additional time was needed.
[2] An amendment to the statute effective July 1, 1989, now entitles mortgagees to thirty days notice rather than ten. Miss.Code Ann. § 83-13-9 (Rev.1991).