# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-IA-00307-SCT

*JAMES ALLEN INSURANCE BROKERS AND*
*CERTAIN UNDERWRITERS AT LLOYD'S,*
*LONDON, SUBSCRIBING TO CERTIFICATE NO.*
*FRO-100944*

*v.*

*FIRST FINANCIAL BANK*


| | |
|---|---|
| DATE OF JUDGMENT: | 02/07/2018 |
| TRIAL JUDGE: | HON. EDDIE H. BOWEN |
| TRIAL COURT ATTORNEYS: | JAMIE DEON TRAVIS |
| | BENJAMIN E. GRIFFITH |
| | DAVID A. BARFIELD |
| | CHRISTOPHER ALBERT D'AMOUR |
| | BENJAMIN BLUE MORGAN |
| | L. WESLEY BROADHEAD |
| | JOHN LEONARD WALKER, JR. |
| | KEVIN BRIAN BASS |
| | LARA A. COLEMAN |
| | EUGENE COURSEY TULLOS |
| | CHAD J. HAMMONS |
| | STEPHANIE JANE BENTLEY |
| | G. ROBERT PARROTT, II |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | CHRISTOPHER ALBERT D'AMOUR |
| | BENJAMIN E. GRIFFITH |
| | LAURA FORD ROSE |
| | G. ROBERT PARROTT, II |
| | LAUREN ELIZABETH WARD |
| ATTORNEY FOR APPELLEE: | CHAD J. HAMMONS |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED AND REMANDED - 04/18/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     James Allen Insurance Brokers (JAIB) and Certain Underwriters at Lloyd's, London, Subscribing to Certificate No. FRO-100944 (Lloyd's) petitioned this Court for interlocutory review of the Simpson County Circuit Court's order granting partial summary judgment in favor of First Financial Bank (FFB).  The trial court held that FFB is entitled to insurance proceeds from a fire loss that occurred at Luther and Freda Feazell's poultry farm, because JAIB and Lloyd's failed to comply with Mississippi law requiring notice of cancellation of property insurance.  We affirm the trial court's grant of partial summary judgment in favor of FFB.

**FACTS**

¶2.     The Feazells have used Insurance Associates of Magee (IAM) as their local insurance agent to procure insurance coverage on their chicken farm and equipment since 2006.  They also are indebted to FFB under promissory notes for loans first issued in 2006 in relation to the farm.  The loans are secured by, among other things, four poultry houses on the Feazells' farm, valued at $231,750, $231,750, $150,000, and $150,000.

¶3.     In December 2013, the Feazells, through IAM, requested that a new insurance policy be issued with Lloyd's with an effective date of December 13, 2013.  The Feazells needed a new underwriter because their prior carrier would not renew coverage.

¶4.     On December 11, 2013, IAM obtained a quote from JAIB on a policy to be issued by Lloyd's.  The quote included a letter entitled "Non-Admitted Farm Quote Binding Terms: This Quote is Valid for 7 days."  The letter quoted a premium of $7,429.34.  The terms

provided that a "binder"[1] would issue with an effective date from December 13, 2013, to December 13, 2014.

¶5.   The letter contained the following:

> To issue the policy, we will need all of the following items in our office within 10 days of the binding effective date.  <u>Your binding authority is a maximum of 10 days after the effective date.  If all items are not received, we will cancel the policy flat with no coverage afforded at anytime and all premium, less the policy fee will be returned.</u>

¶6.   One of the items stated, "Total premium payment must be received in our office within 10 days of agent's written request to bind coverage in order to retain requested effective date."  The original due date for the total premium was December 23, 2013.

¶7.   To obtain the total premium payment funds, the Feazells entered into a finance agreement with Insurance Premium Financing Solutions (Imperial PFS).   Under this agreement, the Feazells would provide $2,383.80 of the $7,479.33 premium payment, while Imperial PFS would provide the remaining $5,095.53.  IAM received Imperial PFS's portion of the total premium payment on December 16, 2013.

¶8.   FFB provided the remaining portion of the premium to IAM using funds from the Feazells' escrow accounts.  FFB's check containing its portion of the premium payment was dated December 18, 2013, and IAM allegedly received it on December 26, 2013.  According to JAIB and Lloyd's, despite possessing the funds to pay the full premium, IAM did not send payment or inform JAIB that it had the funds.

---

[1] "[A] binder is a contract for temporary insurance, until either a permanent policy can be written or its issuance approved or disapproved by the insuror."  ***Miss. Farm Bureau Mut. Ins. v. Todd***, 492 So. 2d 919, 929 (Miss. 1986) (citing 43 Am. Jur. 2d *Insurance* § 219 (1982)).

¶9.    On December 20, 2013, JAIB informed IAM, via email, that the Feazells' premium payment had not been received. The email stated that JAIB would "consider the premium to be on time if received by Friday, Dec. 27[, 2013.]"

¶10.    On December 27, 2013, again via email, JAIB informed IAM that the premium payment had not been received. This email provided a final payment-deadline extension, stating that the "full payment must be on" the desk of Elizabeth Hauser, JAIB's employee, by January 2, 2014, or the effective date would be reset to the date the premium payment was paid with "no coverage offered in the interim." According to JAIB, the additional deadline offered to IAM was a courtesy and was not required of JAIB.

¶11.    FFB claims IAM transmitted full payment of the premium to JAIB on December 30, 2013, in the amount of $7,429.33. But JAIB disputes this.

¶12.    JAIB claims no proof exists that the premium was transmitted by IAM on December 30, only that the premium payment check bore the date December 30, 2013. JAIB claims that it had not received the total premium payment by January 2, 2014, which resulted in a failure to satisfy an express condition of the written terms required to bind coverage for the requested effective date of December 13, 2013.

¶13.    On January 5, 2014, three days after the final premium payment deadline, the Feazells' poultry farm caught fire. All four of the chicken houses used to secure FFB's loan to the Feazells were either destroyed or rendered inoperable. According to FFB, due to the extensive fire damage, the Feazells' poultry operation came to a halt, effectively resulting in complete casualty loss.

4

¶14.    On January 8, 2014, JAIB sent an email to IAM stating,

> We still do not have premium for this policy. The requested date of 12/13 can no longer be honored. You should be aware that at this time there is no coverage due to nonpayment. Full premium must arrive by Friday, January 10 or the binder will be cancelled with a penalty assessed to your commission.

¶15.    FFB claims that JAIB did not send FFB a copy of the January 8, 2014, email, nor did it otherwise notify FFB of any problem with receiving the premium. FFB says it never received a notice of cancellation of the policy from JAIB or Lloyd's at any time during the communications from JAIB to IAM regarding the unpaid premium.

¶16.    JAIB and Lloyd's claim that JAIB did not receive the premium payment check from IAM until January 10, 2014.[2]   JAIB sent IAM an email that same day, stating,

> Attached is the revised binder for [the Feazells]. Because premium was not received on time, the effective date of this policy was reset to the date premium was paid. The policy term is 1/10/2014 to 1/20/2015.

¶17.    On May 13, 2014, FFB tendered a claim in writing to JAIB requesting that JAIB and Lloyd's honor the binder issued and pay FFB the amount owed for its loss based on its status as the loss payee under the terms of the binder. Neither JAIB or Lloyd's honored the request.

¶18.    In August 2014, the Feazells filed a complaint against IAM, JAIB, and Lloyd's, asserting various causes of action. In March 2015, after the court allowed it to intervene, FFB filed a complaint and cross-claim, asserting (i) breach of contract by the Feazells; (ii) failure of JAIB and Lloyd's to pay FFB insurance proceeds as the contractual and statutory

---

[2] The record contains a copy of the check from IAM to JAIB; it is stamped as having been received by JAIB on January 10, 2014.

loss payee under Mississippi Code Sections 83-13-9 and 83-5-28; (iii) bad faith by JAIB and/or Lloyd's; and (iv) negligent failure to procure insurance by IAM.

¶19. Following discovery, FFB filed a motion for partial summary judgment seeking judgment in its favor on the second count, the alleged failure of JAIB and Lloyd's to pay FFB the amounts due under the insurance binder issued to the Feazells on FFB's collateral. The trial court granted FFB's motion for partial summary judgment and entered an order in December 2017.

¶20. In February 2018, on its own motion, the trial court amended the December 2017 order, substituting the following original language:

> While the present binder stated that the full premium was payable and due within 10 days of the binding effective date[, t]his date was extended on numerous occasions. The binder itself does not contain any terms regarding automatic cancellation or withdrawal of coverage.

The following language, which JAIB and Lloyd's contend was proposed by the Feazells, FFB, and IAM, was substituted:

> The "Non-Admitted Farm Quote Binding Terms" document that was attached to a December 11, 2013 email from [JAIB] to [IAM] stated that the premium was due in full within 10 days of the binding effective date.

> However, the actual binder that was issued with effective dates of coverage from December 13, 2013 through December 13, 2014 contained no deadline for the payment of the premium and did not contain any terms regarding automatic cancellation or withdrawal of coverage.

¶21. JAIB and Lloyd's petitioned this Court for interlocutory appeal, which this Court granted.

**DISCUSSION**

6

¶22. Summary judgment granted by the trial court is reviewed de novo. *Hardy v. Brock*, 826 So. 2d 71, 74 (Miss. 2002). Summary judgment is appropriate if the evidence—admissions in the pleadings, answers to interrogatories, depositions, affidavits, etc.—shows "that there is no genuine issue" of material fact "and that the moving party is entitled to a judgment as a matter of law. *Duckworth v. Warren*, 10 So. 3d 433, 436 (Miss. 2009) (quoting Miss. R. Civ. P. 56(c)).

¶23. JAIB and Lloyd's submit that the material facts are not in dispute. They claim that the trial court misinterpreted those facts and the applicable law when it granted partial summary judgment in favor of FFB. They contend that the sole issue is a legal one—whether FFB was owed a statutory notice of cancellation when the policy never was cancelled because the binding terms never were satisfied. They maintain no coverage was in place at the time of the fire loss; without effective coverage, the notice requirements of Mississippi Code Sections 83-13-9 and 83-5-28(1) were not triggered. We disagree.

¶24. Section 83-13-9 contains a union or standard mortgage clause that becomes a part of every fire-insurance policy written in Mississippi. *Carter v. Allstate Indem. Co.*, 592 So. 2d 66, 71 (Miss. 1991). The purpose of the clause "is to protect the mortgagee from loss occurring after the mortgagor or owner has caused a lapse in insurance coverage." *Id.* (emphasis omitted) (citing *Highlands Ins. Co. v. Allstate Ins. Co.*, 688 F. 2d 398, 406 (5th Cir. 1982)).

¶25. Section 83-13-9 provides, in pertinent part,

> Each fire insurance policy on buildings taken out by a mortgagor or grantor in
> a deed of trust shall have attached or shall contain substantially the following

7

mortgagee clause, viz: . . . . This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for thirty (30) days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this company shall have the right on like notice to cancel this agreement.

Miss. Code Ann. § 83-13-9 (Rev. 2011).

¶26.    Section 83-5-28(1), in effect at the time of this case, also provides as follows:

A cancellation, reduction in coverage or nonrenewal of liability insurance coverage, fire insurance coverage or single premium multiperil insurance coverage is not effective as to any coverage issued or renewed after June 30, 1989, unless notice is mailed or delivered to the insured and to any named creditor loss payee by the insurer not less than thirty (30) days prior to the effective date of such cancellation, reduction or nonrenewal. *This section shall not apply to nonpayment of premium unless there is a named creditor loss payee, in which case at least ten (10) days' notice is required.*

Miss. Code Ann. § 83-5-28(1) (Rev. 2011) (emphasis added).[3]

¶27.    Here, the record shows that an insurance binder was issued by JAIB and Lloyd's with an effective date of coverage for the Feazells' chicken farm beginning on December 13, 2013, through December 13, 2014.  The binder listed FFB as a mortgagee/loss payee and included FFB's mailing address.

_____

[3] Section 83-5-28(1) was amended, effective July 1, 2018, with the following language added:

The cancellation and nonrenewal notice requirements of this section shall not apply when a replacement policy form is issued by the same insurer or when a transfer of an insured to a licensed affiliate of the insurer occurs, so long as the replacement of policy forms or transfer results in the same or substantially similar coverage and the insurer mails or delivers to the insured at least thirty (30) days prior to the renewal effective date notice of any term or condition that is less favorable to the policyholder.

Miss. Code Ann. § 83-5-28(1) (Supp. 2018).

¶28. Although temporary, a binder is nonetheless "a contract of insurance." *T.H. Mastin & Co. v. Russell*, 214 Miss. 700, 59 So. 2d 321, 324 (1952). And it is sufficient to trigger statutory notification requirements. *Scottsdale Ins. Co. v. Deposit Guar. Nat'l Bank*, 733 So. 2d 863, 865-66 (Miss. Ct. App. 1999).

¶29. In *Scottsdale*, a bank was listed as the mortgagee and loss payee under a binder providing builder's risk insurance on a home. *Id.* at 864. The binder was to provide coverage from July 25, 1988, through January 25, 1989. *Id.* Under the binder, a policy later was issued covering the property from July 25, 1988, through October 25, 1988. *Id.* The bank was not listed as the mortgagee or loss payee on the policy. *Id.* at 864-65. In March 1989, the home was partly destroyed by a tornado. *Id.* at 865 (quoting Miss. Code Ann. § 83-13-9). The insurer refused to pay for the damage because the loss occurred after the expiration dates of the policy and the preceding binder. *Id.* The bank sued, claiming the insurer had failed to comply with the statutory requirement that at least ten days' notice be given a mortgagee before an insurance policy is cancelled. The trial court entered summary judgment in favor of the bank as to the insurer's liability. *Id.*

¶30. The Court of Appeals affirmed, noting Section 83-13-9's requirement that a policy that cancels as provided by its terms "shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease . . . ." *Id.* at 865-66.[4] The Court of Appeals agreed with

---

[4] The Court of Appeals noted in the case that Section 83-13-9 was amended in July 1989, entitling mortgagees to thirty days' notice rather than ten. *Id.* at 865 n.2 (citing Miss. Code Ann. § 83-13-9 (Rev. 1991)).

the trial court that even though the evidence showed that two days before the tornado, the mortgagee had discovered that the coverage had expired, this did not relieve the insurer's obligation to give notice of cancellation as required by Section 83-13-9. *Id.* at 866. Based on its reading of Section 83-13-9, the Court of Appeals stated, "Actual notice by the mortgagee after the expiration of the policy does not prevent a lapse in coverage. Only the notice demanded by statute operates fully to protect the mortgagee." *Id.*

¶31. JAIB and Lloyd's contend that *Scottsdale* is distinguishable because the binder in that case was terminated at its expiration date. They contend that the binder here was not effective on the date of the loss because the premium payment had not been received by JAIB. They argue that the failure to timely fulfill the condition precedent of the premium payment meant that no coverage was in effect at the time of the loss. And if no coverage was formed, they contend that no coverage existed to cancel, making cancellation a nonissue. JAIB and Lloyd's therefore argue that they should not have been held liable by the trial court for resulting losses or damages incurred by FFB.

¶32. They contend the facts here are similar to those in *AmFed National Insurance Co. v. NTC Transportation, Inc.*, 196 So. 3d 947 (Miss. 2016), in which this Court held that a workers' compensation insurer was not required to comply with the governing statute's notice requirements when a policy expired for failure to pay a premium on time and the insurer did not cancel the policy.

¶33. In *AmFed*, despite receiving renewal notices sixty and thirty days in advance of a workers' compensation policy expiration date, the insured failed to timely pay the insurance

premium for renewal coverage. *Id.* at 950. This resulted in a two-week lapse of coverage for the insured, during which time one of its employees was injured on the job. *Id.* When the insurer denied coverage for that period, the insured sued, claiming, among other things, that the insurer had failed to comply with Section 71-3-77's notice requirements. *Id.* at 950-51.

¶34. This Court held that the notice requirements did not apply under the facts of that case. *Id.* at 957. Construing Section 71-3-77, in effect at the time,[5] the *AmFed* Court found that the statute's notice requirements applied only to cancellations by the insurer within the policy period or in instances in which the insurer did not intend to renew the policy upon its expiration. *Id.* at 957-58. What occurred in the case, according to the *AmFed* Court, could not be characterized as a cancellation of workers' compensation coverage by the insurer or a manifest intention by the insurer not to renew the insured's policy. *Id.* at 961. Instead, the insured's policy simply expired, and its coverage lapsed for the insured's failure to pay the premium on time. *Id.*

¶35. FFB contends that *AmFed* is distinguishable because it turned on the interpretation of a completely different statute and set of circumstances. Section 71-3-77, the statute at issue in *AmFed*, required notice of cancellation to the insured, with no equivalent requirement to notify an interested third party, such as a loss payee, which Section 83-5-28(1) requires. FFB argues that, as a listed loss payee, it is afforded more protection than the policyholder, as was found to be the case in *Scottsdale*, in which the Court of Appeals held

---

[5] Section 71-3-77 was amended after the time period in question in *AmFed*.

that although coverage may be cancelled, it "continue[s] in force for the benefit only of the mortgagee . . . ." ***Scottsdale***, 733 So. 2d at 866 (quoting Miss. Code Ann. § 83-13-9).

¶36.  We agree with FFB.  First, the claim asserted by JAIB and Lloyd's that coverage never went into effect because JAIB did not receive the premium timely has no merit.

¶37.  "Insurance policies are matters of contract," and the same rules that govern other contracts apply to the interpretation of insurance contracts.  ***AmFed***, 196 So. 3d at 954 (quoting ***Prudential Ins. Co. of Am. v. Stewart***, 969 So. 2d 17, 21 (Miss. 2007) (quoting ***Krebs v. Strange***, 419 So. 2d 178, 181 (Miss. 1982))).  Likewise, the same essential elements for contract formation apply: offer and acceptance, supported by consideration.  ***Id.*** (citing ***Stewart***, 969 So. 2d at 21).  Generally, "[w]hen the insurance company's offer to issue the insurance is accepted by the insured and premium payment is made, the contract is formed and the rights and obligations of the respective parties 'lock in.'" ***Krebs***, 419 So. 2d at 181.

¶38.  But, in the absence of an agreement to contrary, "[i]t is not essential that the premiums on the policies be paid, or that the policies be actually delivered to the insured, before the contract becomes effective." ***Scottish Union & Nat'l Ins. Co. v. Warren Gee Lumber Co.***, 118 Miss. 740, 80 So. 9, 13 (1918).  This includes insurance binders.  *See, e.g.,* ***Cummings v. New England Ins. Co.***, 266 F.2d 888 (5th Cir. 1959) (construing Mississippi caselaw to hold that failure to discuss the amount of the premiums does not necessarily prevent a binder from becoming effective); *see also* ***Camden Fire Ins. Ass'n v. Koch***, 216 Miss. 576, 63 So. 2d 103 (1953) (holding that a general agent for an insurance company may waive any provision of the policy).

¶39. Here, while JAIB and Lloyd's certainly could have contracted to require that the premium be paid before the binder went into effect, they did not do so. Instead, they agreed to issue a binder with an effective date of coverage from December 13, 2013, through December 13, 2014, with the full premium due within ten days of the binding effective date.

¶40. Thus, under this term for the binder, it cannot be said that coverage did not go into effect because JAIB did not receive the premium timely. Coverage did go into effect, as JAIB's corporate representative admitted during depositions.

> Q. Let me ask you something. If the chicken houses in this case had burned down on December 14th, 2013, would there have been coverage for them?
>
> A. Yes.

¶41. Whether the coverage ever cancelled or lapsed for failure to pay the premium timely is not a question currently before this Court in this interlocutory appeal. That question concerns the insured but not the mortgagee/loss payee in this particular case.

¶42. Coverage having gone into effect on December 13, 2013, under the terms of the binder, and FFB having been listed in the binder as a mortgagee/loss payee triggered Section 83-5-28(1)'s notification requirements for purposes of FFB. JAIB and Lloyd's failed to comply with those notification requirements; therefore, they are liable to FFB for its loss. Accordingly, the trial court correctly granted partial summary judgment in favor of FFB.

## CONCLUSION

¶43.    The trial court's grant of partial summary judgment in favor of FFB is affirmed.  We remand the case to the Circuit Court of Simpson County for further proceedings consistent with this opinion.

¶44.    **AFFIRMED AND REMANDED.**

   **RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**