# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00099-COA

**SDBT ARCHIVES LLC**                                                    **APPELLANT**

**v.**

**PENN-STAR INSURANCE COMPANY AND**                          **APPELLEES**
**BGA FINANCE INC.**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/02/2022 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | C. VICTOR WELSH III |
| | ANN RUSSELL CHANDLER |
| ATTORNEYS FOR APPELLEES: | EDWARD J. CURRIE JR. |
| | JOSEPH WALTER GILL |
| | CHARLES EDWIN ROSS |
| | DENNIS JASON CHILDRESS |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 06/27/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., LAWRENCE AND EMFINGER, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.    This case arises out of a property insurance claim by SDBT Archives LLC (SDBT) for hail damage to its storage warehouse in Greenville, Mississippi. SDBT borrowed money from BGA Finance Inc. (Finance), a premium finance company (PFC), to pay its property insurance premium for a policy issued by Penn-Star Insurance Company (Penn-Star). SDBT gave Finance its power of attorney and agreed that Finance could cancel the policy if SDBT defaulted on its loan.

¶2.    In February 2018, SDBT failed to make its monthly payment to Finance.

Accordingly, Finance gave SDBT notice to bring the loan current within ten days, or Finance would cancel the policy under the PFC cancellation statute, Mississippi Code Annotated section 81-21-19 (Rev. 2015). When SDBT failed to make the payment within ten days, Finance cancelled SDBT's policy, effective March 8, 2018. Finance also provided SDBT's notice of the policy cancellation to Penn-Star's general agent, Beasley General Agency Inc. (Beasley General). Then Penn-Star, through Beasley General, gave thirty-days' notice of cancellation to South Delta Planning and Development District Inc. (South Delta), which held a mortgage on SDBT's warehouse. The notice stated that South Delta's interest in the policy would be effectively cancelled on April 18, 2018.

¶3. On March 10, 2018, two days after SDBT's interest in the policy was cancelled but before South Delta's interest was cancelled, SDBT's warehouse suffered over $800,000 in roof damage from a hail storm. Penn-Star denied SDBT's claim on the grounds the policy was not in effect on March 10. However, South Delta filed a claim under the policy that Penn-Star had paid because South Delta's interest in the policy was still in effect on March 10.

¶4. Aggrieved by the denial of its insurance claim, SDBT filed this lawsuit,[1] alleging the policy was not properly cancelled prior to the hailstorm, and thus Penn-Star improperly denied the claim. SDBT filed a motion for partial summary judgment claiming cancellation

_____

[1] The operative complaint for this appeal was SDBT's "Third Amended Complaint for Declaratory Relief, Breach of Contract and Other Damages" naming Defendants Penn-Star, Finance, and Beasley General. However, during the pendency of this appeal, Beasley General was voluntarily dismissed as a party, and SDBT does not object to its dismissal. We therefore affirm Beasley General's dismissal.

2

of the policy was not effective until April 18, 2018, because of Finance and Penn-Star's failure to comply with section 81-21-19(4), which provides that an "insurance contract may not be cancelled unless notice is given to . . . [the] mortgagee [South Delta]." In response, Finance filed a motion for summary judgment on all of SDBT's claims, and Penn-Star filed a motion for summary judgment and an alternative motion for partial summary judgment. The circuit court denied SDBT's motion for partial summary judgment and granted Finance's and Penn-Star's motions for summary judgment. The court found no genuine issue of material fact regarding the insurance coverage, and summary judgment was granted in favor of the defendants as a matter of law.

¶5. SDBT now appeals, arguing that the circuit court improperly found section 81-21-19 included "the legal fiction of separate policies of insurance that could be separately cancelled." Finding no error with the circuit court's judgment, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶6. SDBT's principal place of business is a commercial warehouse used to store medical records in Greenville, Mississippi. SDBT's purchase of the warehouse was financed through a loan program with South Delta in 2013. In July 2017, SDBT sought renewal of its property insurance coverage and obtained a commercial insurance policy from Penn-Star for the period from July 31, 2017, to July 31, 2018. The annual premium on the policy was $11,609.81, payable upfront. SDBT made a down payment of $3,127.45 on the premium and borrowed the remaining balance of $8,482.36 from Finance, which paid the rest of the

3

premium.[2] SDBT executed a premium finance agreement (Finance Agreement) with Finance on July 11, 2017, where SDBT agreed to make nine monthly payments of $1,006.43 to Finance on the eleventh day of each month starting in August 2017. Under the terms of the Finance Agreement, SDBT granted Finance power of attorney[3] to cancel the Penn-Star policy on SDBT's behalf and collect all return premiums in the event SDBT failed to make timely loan repayments. On the policy, South Delta was identified as the mortgagee.

¶7. Finance and Penn-Star note that SDBT never made a single payment on time to Finance. Instead, SDBT would wait to receive a ten-day notice from Finance warning of cancellation before SDBT attempted to make its payment.[4] This practice resulted in Finance's cancelling the Penn-Star policy twice before the cancellation here—once in August 2017 and again in January 2018. Both times, SDBT cured its default with Finance,

---

[2] Finance explains that its only business is loaning money to insureds to finance their annual premiums. Companies such as Finance are licensed by the Mississippi Department of Banking and Consumer Finance Agency and regulated by statute under Mississippi Code Annotated sections 81-21-1 to -27 (Rev. 2015). Finance provides premium financing for policies issued from various insurance companies, not just Penn-Star.

[3] The power-of-attorney clause was consistent with section 81-21-19(1). SDBT agreed to the following:

> This is to certify that the premium for this policy(ies) has been furnished by LENDER and to further state that in recognition of the several possibilities which might cause my inability or failure to pay any insurance premium loan installment when due, I do irrevocably make, constitute, and appoint BGA Finance, Inc. and its assigns, my true and lawful attorney for me to cancel the above listed insurance policy(ies). . . . All acts done by my attorney-in-fact pursuant to this power shall be binding upon me and my heirs and legal representatives . . . .

[4] Finance sent SDBT six ten-day notices of intent to cancel over the course of the nine-month loan period.

and Penn-Star agreed to reinstate the policy at Finance's request.

¶8. In February 2018, SDBT again failed to make its payment, which was due on February 11. Thus, on February 22, 2018, Finance mailed SDBT a ten-day notice of intent to cancel, advising that it would request cancellation of the Penn-Star policy under its power of attorney unless SDBT paid all premiums by March 4, 2018. After SDBT did not make the payment within ten days (by March 4), Finance mailed a notice of cancellation of the policy to SDBT and Beasley General on March 8, 2018.[5] This notice, as with the other notices, informed SDBT that any payments made after the notice would not automatically reinstate the policy; instead, requests for reinstatement would be at the sole discretion of Penn-Star.

¶9. On March 10, 2018, two days after the policy cancellation, SDBT's warehouse sustained significant hail damage to its roof. On both March 12 and March 14, 2018, SDBT made a payment to Finance of $1,006.43, bringing its account current. SDBT then made a claim for loss under the policy, citing wind, hail, and lightning damage to the warehouse. Upon receiving these post-cancellation payments, Finance sent SDBT an email receipt, stating:

> IMPORTANT NOTICE: You hereby agree that payment(s) received after Finance Company has mailed a cancellation notice will reduce the indebtedness and will not reinstate the policy. The Finance Company, at its option, may only request reinstatement. Only your Insurance Company, at its sole discretion, may reinstate coverage. Do not assume or expect that you

---

[5] The circuit court found Beasley General is a legal entity separate from Finance and is the managing general agent for Penn-Star's policy. SDBT did not challenge these findings. Beasley General was authorized to "give and receive notices including, but not limited to, notices of cancellation" related to the policy on Penn-Star's behalf.

have insurance coverage.  Check with your agent to be sure.

¶10.   On March 13, 2018, Finance sent SDBT a notice that it had requested Penn-Star reinstate its policy but noted that Penn-Star might decline to do so.  Because it was SDBT's third cancellation that year due to SDBT's default on the loan, Penn-Star declined to reinstate the policy under its internal guidelines.  Finance then refunded SDBT's March 12 payment.  Beasley General, on behalf of Penn-Star, issued a cancellation endorsement form, noting the policy had been cancelled, effective March 8, 2018, "for non-payment to finance company."  Additionally, the form noted SDBT received a full refund of all unearned premiums on the policy as of the March 8 cancellation date, totaling $4,481.98.  On March 15, 2018, Beasley General, on behalf of Penn-Star, mailed South Delta a separate notice of cancellation of insurance.  The notice informed South Delta that since SDBT defaulted on its premium finance payment, South Delta's interest in the policy would end on April 18, 2018.  On May 15, 2018, Penn-Star reiterated its denial of coverage to SDBT in a letter to SDBT's public adjuster:

> As advised in our letter of March 21, 2018 this policy cancelled for non-payment of premium effective March 8, 2018.  On February 22, 2018, BGA Finance Inc. sent a notice of intent to cancel to SDBT Archives, LLC with an effective date of cancellation of March 8, 2018.  On March 12, 2018 and again on March 14, 2018 SDBT Archives LLC made a payment to the finance company.  As this was after the effective date of cancellation, the policy was not re-instated.

> The notice to the mortgage company was for the benefit of their interest in the property only and did not extend to SDBT Archives, LLC.  Accordingly, Penn-Star Insurance Company stands by the denial of coverage issued to SDBT Archives for the reported hail damage to the roof on March 10, 2018.

¶11.   In its third amended (and the operative) complaint, SDBT sued Penn-Star, Finance,

6

and Beasley General[6] in the Washington County Circuit Court. SDBT sought declaratory relief on the effective date of the policy's cancellation, whether the policy was effectively cancelled at all, and Penn-Star's rights to assert claims, if any, under the South Delta note, mortgage, or deed of trust. Further, SDBT sought a determination on whether the hail damage was covered by the policy.[7]

¶12.   In July and August 2021, the parties filed cross-motions for summary judgment regarding insurance coverage. After a hearing on the motions, on February 2, 2022, the circuit court entered an order denying SDBT's motion for partial summary judgment and granting the defendants' motions for summary judgment. The court ruled that Finance complied with the notice requirements of the PFC cancellation statute when it cancelled SDBT's interest in the insurance policy. Further, the court found that SDBT received sufficient and proper notice—Penn-Star's thirty-day notice to South Delta only applied to South Delta's separate interest in the policy and not SDBT's interest.

¶13.   In granting summary judgment in favor of the defendants, the circuit court concluded:

---

[6] In July 2019, SDBT sought to join South Delta as a defendant as well; however, the circuit court denied the joinder due to a stipulation filed by SDBT later in July, which stated that SDBT and South Delta had agreed that "[a]ll applicable insurance proceeds shall be applied first to satisfy [SDBT's mortgage], with all excess to be paid to SDBT Archives." The purpose of the stipulation was to "insur[e] that South Delta will not incur legal fees and costs as a result of being added to this lawsuit."

Also in July 2019, at a hearing, South Delta's attorney advised the court that it intended to file a claim with Penn-Star under the policy separate from SDBT for the March 10 damage to its collateral. In April 2020, Penn-Star reached a settlement for South Delta's claim under the policy.

[7] Additionally, SDBT alleged breach of contract, breach of good faith and fair dealing, and negligence. As to Penn-Star, SDBT also alleged tortious interference with a contract/business relationship. SDBT pled other claims but abandoned them.

The[re] are no genuine issues of material fact as stated herein. SDBT's interest in the Penn-Star policy was cancelled effective March 8, 2018. South Delta's separate interest in the policy was not cancelled until April 18, 2018. As SDBT's interest in the policy was cancelled two days before the March 10, 2018, hailstorm at issue, there is no coverage under the policy for SDBT's claim. As such Penn-Star's denial of SDBT's claim under the policy was proper and Penn-Star is entitled to summary judgment in its favor as a matter of law on all of SDBT's claims.

The circuit court's ruling will be discussed in more detail below.

### *Statutes at Issue*

¶14. Indisputably, the controlling statute is the PFC cancellation statute, section 81-21-19, which provides:

(1) When a premium finance agreement contains a power of attorney clause enabling the [PFC] to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the [PFC] unless such cancellation is done in accordance with this section.

(2) Not less than ten (10) days' written notice shall be mailed to the insured, at the last known address shown on the records of the [PFC], of the *intent of the* **[PFC]** *to cancel* the insurance contract unless the default is cured within such ten-day period. [PFC's notice of intent to cancel].

(3) After expiration of such ten-day period, the **[PFC]** may thereafter cancel such insurance contract or contracts by sending to the insurer *a notice of cancellation*. The insurance contract shall be cancelled as if such notice of cancellation had been submitted by the insured, but without requiring the return of the insurance contract or contracts. The [PFC] shall also mail a copy of the notice of cancellation to the insured at the last known address shown on the records of the [PFC]. [PFC's notice of cancellation to insurer with copy to insured].

(4) All statutory, regulatory and contractual restrictions providing that the insurance contract may not be cancelled unless notice is given to a . . . *mortgagee or third party other than the insured* shall apply where cancellation is effected under the provisions of this section. *The* **insurer** *shall give the prescribed notice on behalf* of itself or the insured *to any . . . mortgagee* or other third party on or before the fifth business day after the day it receives the

8

notice of cancellation from the [PFC] and shall determine the effective date of cancellation taking into consideration the number of days' notice required to complete the cancellation. [Insurer's notice to mortgagee].

(5) No liability of any nature whatsoever either in favor of the insured, any governmental agency, mortgagee or third party shall be imposed upon the insurer as a result of any misstatement of fact contained in such notice of cancellation or statement furnished by the insurance [PFC] to the insurer.

Miss. Code Ann. § 81-21-19 (emphasis added).

¶15. Subsection (2) of the PFC cancellation statute thus requires the PFC to give a ten-day notice of intent to cancel to the insured. If the default is not cured, subsection (3) provides that the PFC gives a notice of cancellation to the insurer with a copy to the insured. The insurance policy will be cancelled as if the insured itself cancelled the policy. Subsection (4) provides that the insurer must give notice to the mortgagee and determine the length of notice necessary by referring to other statutes. The first sentence of subsection (4) only requires notice to third parties other than the insured. On its face, this sentence does not incorporate any provisions of the other statutes dealing with additional notice to the insured. Finance and Penn-Star claim that subsection (4) of section 81-21-19 incorporates by reference section 83-13-9, the "standard mortgage clause" statute (otherwise known as the mandatory or union mortgage clause statute).[8] "The purpose of the [standard mortgage]

---

[8] Although the statute specifies "fire" insurance policies, the inclusion of this clause is not limited to fire insurance policies but "*all insurance policies* on mortgaged property. . . ." 2 Jeffrey Jackson et al., *Encyclopedia of Miss. Law* § 40:98 (2d ed. 2015) (emphasis added). According to the circuit court order, all the parties agree that the Penn-Star policy is such a policy, and we agree.

The statute requires the deed of trust to have attached or contain the following substantially similar mortgagee clause:

Loss or damage, if any, under this policy, shall be payable to (here insert the

9

clause 'is to protect the mortgagee from loss occurring after the mortgagor or owner has caused a lapse in insurance coverage.'" *James Allen Ins. Brokers v. First Fin. Bank*, 267 So. 3d 759, 763 (¶24) (Miss. 2019) (quoting *Carter v. Allstate Indem. Co.*, 592 So. 2d 66, 71 (Miss. 1991)).

¶16.    SDBT argues that section 83-13-9 is not incorporated into section 81-21-19.  Instead, SDBT would incorporate section 83-5-28(1) (Rev. 2011), concerning cancellation, reduction, or nonrenewal of insurance coverage.  It provides in pertinent part:

> A cancellation . . . of . . . insurance coverage . . . is not effective as to any coverage issued or renewed after June 30, 1989, unless notice is mailed or delivered *to the insured and to any named creditor loss payee* by the insurer not less than thirty (30) days prior to the effective date of such cancellation, reduction or nonrenewal.  *This section shall not apply to nonpayment of premium unless* there is a named creditor loss payee, in which case at least ten (10) days' notice is required . . . .

*Id.* (emphasis added).  Finance claims this code section is not applicable, but if it is, it does not apply to Finance.  Penn-Star argues that this code section does not apply to it either because cancellation here was by the insured and PFC, not the insurer.

### *February 2, 2022 Circuit Court Order*

---

> name of the party), as _____ mortgagee (or trustee), as _____ interest may appear, and this insurance, *as to the interest of the mortgagee* (or trustee) *only* therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property. . . .  This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force *for the benefit only of the mortgagee* (or trustee) for thirty (30) days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this company shall have the right on like notice to cancel this agreement . . . .

Miss. Code Ann. § 83-13-9 (Rev. 2022) (emphasis added).

¶17. The circuit court first summarized SDBT's arguments in support of its motion for partial summary judgment. SDBT argued if proper notice was not given, the cancellation of the policy was ineffective and the property was covered at the time of the hail storm loss. SDBT claimed that the defendants' separate-cancellation-dates argument under its "two contracts of insurance" theory (that SDBT's contract was cancelled on March 8, 2018, before the loss, and South Delta's contract was cancelled on April 18, 2018) was based on a reading of section 83-13-9 and 81-21-19 *in para materia*.[9] SDBT argued, however, that the statutes could only be read *in para materia* if the circuit court deemed section 81-21-19 ambiguous; otherwise, if the statute's language was clear and unambiguous, the circuit court should not use rules of statutory construction but a plain reading of the statute. Regarding SDBT's claims against Penn-Star, SDBT argued its interest in the policy was not effectively cancelled prior to the March 10, 2018 hailstorm; therefore, Penn-Star's denial of its claims under the policy was improper. SDBT contended that because there was only one policy, there could be only one date for the policy's cancellation. Regarding SDBT's claims against Finance, SDBT argued that subsection (4) of section 81-21-19 defeated Finance's motion for summary judgment. Because Finance improperly cancelled the Penn-Star policy as to SDBT, SDBT argued that there could be only one cancellation date for both SDBT and South Delta due to the phrase in subsection (4) that the insurer "shall determine the effective

---

[9] *In para materia* is a rule of statutory construction that allows courts to read together statutes that apply to the same subject matter to determine legislative intent but only if the statute at issue is deemed ambiguous. *G4 LLC v. Pearl River Cnty. Bd. of Supervisors*, 289 So. 3d 283, 288 (¶18) (Miss. 2020) (citing *Tellus Operating Grp. LLC v. Maxwell Energy Inc.*, 156 So. 3d 255, 261 (¶16) (Miss. 2015)).

date of cancellation," which SDBT claimed is April 18, the cancellation date for South Delta's interest.

¶18. The circuit court found that the Finance Agreement between SDBT and Finance contained a power-of-attorney clause enabling Finance to cancel the Penn-Star policy; thus, in order to cancel the policy, the defendants had to comply with the requirements of section 81-21-19. The circuit court ruled that the defendants did so. Specifically, the circuit court held that Finance complied with subsection (2) of section 81-21-19 by mailing to SDBT its ten-day notice of intent to cancel on February 22, 2018. Finance also complied with subsection (3) by sending Beasley General, Penn-Star's agent, its notice of cancellation on March 8, 2018, and mailing SDBT a copy of the notice as well. Additionally, under subsection (3), the circuit court found that Finance's cancellation of the policy that became effective on March 8, 2018, was considered a cancellation submitted by SDBT.

¶19. The circuit court also stated the "statutory restrictions" in subsection (4) refer to the statutory restrictions found in both section 83-13-9 (the standard mortgage clause statute) and section 83-5-28(1) (thirty days' notice to insured and named creditor loss payee). However, the insured does not have to receive additional notice. Further, Penn-Star, through Beasley General, complied with subsection (4) when Beasley General mailed its notice of cancellation of insurance on March 15, 2018 (the fifth business day after Beasley General received the March 8 notice of cancellation from Finance) to South Delta, noting the effective cancellation date of April 18, 2018 (thirty-four instead of thirty days' notice of cancellation). The circuit court held that Penn-Star, through Beasley General, fulfilled its

12

obligation under sections 83-13-9 and 83-5-28 to provide South Delta with thirty days' notice of cancellation as to its interest in the policy. The circuit court also found that Beasley General's March 15 notice of cancellation of insurance to South Delta set the effective date of cancellation only to South Delta's interest in the policy under section 81-21-19(4). SDBT's interest had already been cancelled (effective March 8) under section 81-21-19(3).

¶20. The circuit court ruled, as a matter of law, that SDBT's arguments were incorrect because the plain language of subsections 81-21-19(3) and (4) clearly contemplated separate notices of separate interests in the policy. Further, the plain language of section 83-13-9 (the standard mortgage clause statute) clearly contemplated separate dates of cancellation for SDBT's interest in the policy as opposed to South Delta's interest. Moreover, the circuit court held that SDBT's argument was contrary to the language of subsection (4), as "South Delta has an interest in the Penn-Star policy that is separate and distinct from SDBT's interest." The circuit court explained that SDBT misconstrued subsection (4)—it did not apply to Finance or SDBT's interest in the policy for two reasons. First, subsection (4) only refers to the insurance company Penn-Star, not Finance. Second, subsection (4) indicates that the insurer Penn-Star's obligation to give a separate notice to a mortgagee (South Delta) arises only after the insurer receives the notice of cancellation ("after the policy has been cancelled as to the insured") from the finance company under subsection (3), and subsection (4) states the notice goes only to the mortgagee, not SDBT. The circuit court found the phrase in subsection (4) "shall determine the date of cancellation" refers to the mortgagee's

13

(South Delta's) interest.

¶21. The circuit court also found that section 83-13-9 (the standard mortgage clause statute) provides that when a policy terminates because of an act or neglect of the mortgagor (SDBT), the policy is not invalidated as to the interest of the mortgagee (South Delta). Therefore, the circuit court reasoned that "the cancellation date of the insured and the mortgagee is not required to be the same."

¶22. On appeal from the circuit court's order granting summary judgment in favor of Penn-Star and Finance, SDBT essentially argues that only one insurance contract existed (i.e., separate contracts or interests for the insured and the mortgagee did not exist), and SDBT's contract had not been cancelled at the time of the hailstorm. We are not persuaded.

## STANDARD OF REVIEW

¶23. The trial court's grant or denial of a motion for summary judgment is reviewed de novo. *Wise v. Valley Bank*, 861 So. 2d 1029, 1031 (¶5) (Miss. 2003). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶10) (Miss. 2013) (quoting M.R.C.P. 56(c)). The evidence shall be viewed in the light most favorable to the non-moving party. *Id.* at (¶9).

## ANALYSIS

¶24. SDBT claims that the policy's cancellation by Finance was not effective prior to the March 10 hailstorm, despite Finance's March 8 notice of cancellation. SDBT argues this

14

improper cancellation violated the PFC cancellation statute. If the "plain meaning" of section 81-21-19 is applied, SDBT claims that there is no mention of a separate cancellation of the separate interests of SDBT and South Delta but, instead, only one insurance contract. Accordingly, SDBT contends that the circuit court erred in interpreting the statute to allow Finance to separately cancel SDBT's insurance coverage on March 8, 2018 (two days before the hailstorm). SDBT also submits that the circuit court erred in citing section 83-13-9, the standard mortgage clause statute, to support its interpretation that section 81-21-19 contemplates a separate cancellation date for the insured's interest (SDBT) and the mortgage company's interest (South Delta). Further, SDBT argues section 81-21-19 incorporates the mandatory notice requirements of section 83-5-28 regarding cancellation of insurance coverage; thus, notice must have been given to both SDBT as well as South Delta but was not. We shall discuss each of these issues in turn.

¶25. Our independent reading of the PFC cancellation statute supports the circuit court's "plain meaning" of the statute. Under subsections (2) and (3) of section 81-21-19, Finance was required to give SDBT ten days' notice. It did. After SDBT did not cure its default, Finance was required to give Penn-Star a notice of cancellation (with a copy to SDBT). It did. At this point, Finance had completed its obligations under the PFC cancellation statute, and the insurance contract was cancelled as if it had been cancelled by SDBT. Next, receiving notice of cancellation, Penn-Star was required to determine through the use of other statutes the number of days for notice to South Delta. It did. The issue is whether the language incorporated by reference in subsection (4) required any additional notice to the

15

insured. The circuit court did not err in finding it did not. SDBT had already cancelled the policy via Finance, and subsection (4) speaks of giving notice of cancellation to those "other than the insured"; therefore, no additional notice to SDBT was required.

¶26. While section 83-5-28(1) requires the insurer to give a thirty-day notice of cancellation "to the insured and to any named creditor loss payee," the provisions of section 81-21-19(4) only incorporate notice to those "other than the insured." Further, if the cancellation is due to non-payment of premium, section 83-5-28(1) only applies at all if there is a "creditor loss payee" (South Delta, the mortgagee), and then only ten days' notice is required. Thus, in the event section 83-5-28(1) were somehow applicable to SDBT, ten days' notice had already been given to it under subsection (2) of the PFC cancellation statute. Further, Penn-Star gave thirty days' notice to South Delta. As to section 83-13-9, it is incorporated by reference into subsection (4), and "only" applies for the benefit of the mortgagee, South Delta; therefore, no additional notice was required to the insured under the mortgage clause statute.

## I. Statutory Interpretation

¶27. The basis of SDBT's arguments is that the circuit court did not apply the "plain meaning" of the statutes at issue. If done, SDBT contends this Court will find the circuit court improperly interpreted the statutes to allow Finance to "separately cancel" SDBT's insurance coverage two days before the March 10 hailstorm.

¶28. "For statutory interpretation, the initial inquiry is whether the statute at issue is ambiguous." *Miss. Dep't of Rev. v. SBC Telecom Inc.*, 306 So. 3d 648, 652 (¶17) (Miss.

16

2020) (quoting *Vicksburg Healthcare LLC v. Miss. State Dep't of Health*, 292 So. 3d 223, 225 (¶8) (Miss. 2020)). "If the words of a statute are clear and unambiguous, the [reviewing c]ourt applies the plain meaning of the statute and refrains from using principles of statutory construction." *Id.* "The primary rule of statutory construction is to ascertain the intent of the legislature from the statute as a whole. . . ." *Id.*

¶29. SDBT claims the statutes at issue, sections 81-21-19, 83-13-9, and 83-5-28, are not ambiguous, thus the "plain meaning rule" applies and utilizing any rules of statutory construction is improper. SDBT interprets the plain meaning of the statutes to support its argument that there is no separate cancellation of SDBT's and South Delta's interests in the insurance policy. Applying this interpretation to the facts, SDBT argues the policy was cancelled on April18 and, thus, in effect during the March 10 hailstorm.

¶30. We disagree. The circuit court properly applied the plain meaning of the statutes at issue to arrive at its holding of separate cancellations. Alternatively, SDBT uses the plain-meaning rule to justify its misinterpretation of the pertinent statutes to its benefit, taking the statutes out of context and ignoring or misinterpreting applicable caselaw, as will be discussed more specifically below.

## II. Section 81-21-19 – The PFC Cancellation Statute

¶31. We agree with all the parties that the premium finance statute controls; thus, Finance and Penn-Star had to comply with its provisions. Miss. Code Ann. § 81-21-19(1). Whether they did so is the source of the dispute.

¶32. SDBT argues that no part of the controlling statute "speaks in terms of cancelling

17

separate interests of the insured and mortgage company" but only in terms of cancelling a singular "the insurance contract." Further, SDBT claims that the circuit court erroneously found as a matter of law that the plain language of subsections 81-21-19(3) and (4) "clearly contemplate separate notices of separate interests in the policy." Specifically, SDBT argues that Finance and Penn-Star improperly relied on part of subsection (3) to support their argument, which states, in pertinent part, "The insurance contract shall be cancelled *as if* such notice of *cancellation* had been *submitted by the insured . . . .*" Miss. Code Ann. § 81-21-19(3) (emphasis added). SDBT agrees that cancellation submitted by Finance was the same as cancellation submitted by SDBT. However, SDBT claims Penn-Star was obligated to notify South Delta of the effective date "to complete the cancellation" under subsection (4), which provides:

> The insurer shall give the prescribed notice on behalf of itself or the insured to any . . . mortgagee . . . on or before the fifth business day after the day it receives the notice of cancellation from the PFC and shall determine the effective date of cancellation taking into consideration the number of days' notice required *to complete the cancellation.*

Miss. Code Ann. § 81-21-19(4) (emphasis added). SDBT contends that Finance and Penn-Star cite no caselaw or statutes to support their contention that "cancellation . . . submitted by the insured" (under subsection (3)) is effective when a mortgage company does not receive notice (under subsection (4)). Under section 81-21-19, SDBT maintains that neither Finance nor SDBT had the authority to set the effective date of cancellation as March 8, 2018.

¶33. We disagree. As the circuit court held, Finance and Penn-Star fully complied with

18

the PFC cancellation statute in cancelling the policy. The circuit court found the plain language of section 81-21-19 clearly contemplates separate notices of cancellation and separate interests in the policy, as will be discussed.

### A. Subsections 81-21-19(2) and (3)

¶34. In order to cancel the policy, Finance had to comply with subsections (2) and (3) of section 81-21-19. First, under subsection (2), Finance had to give SDBT ten days' written notice of its intent to cancel the policy when SDBT failed to make, for the seventh time, its monthly installment payment to Finance in a timely manner. Finance complied by mailing to SDBT its notice of intent to cancel on February 22, 2018, informing SDBT that the policy would be cancelled if the overdue payment was not received by March 4, 2018.

¶35. Second, under subsection (3), if SDBT did not make the past due payment within ten days, Finance could cancel the policy by sending Penn-Star a notice of cancellation as if the notice of cancellation had been submitted by SDBT. When SDBT did not cure its default, Finance delivered a notice of cancellation to Penn-Star, through Beasley General, on March 8, 2018. Finance was then entitled to a return of unearned premiums as of March 8. Subsection (3) provides that "[t]he insurance contract shall be cancelled *as if* such notice of cancellation had been submitted by the insured." Miss Code Ann. § 81-21-19(3) (emphasis added). In other words, the cancellation was treated as if SDBT cancelled the Penn-Star policy itself. Consequently, Finance complied with subsections (2) and (3) of section 81-21-19.

### B. Subsection 81-21-19(4)

19

¶36. SDBT argues that the plain language of subsection (4) mentions only one singular "insurance contract" that may not be cancelled unless notice is given to the mortgage company. Therefore, SDBT reasons that its interest could not be severed or separately cancelled from South Delta's interest and that the Penn-Star policy could not be cancelled by Finance until notice was given to both SDBT and South Delta, making the policy's cancellation date April 18, 2018. Again, we disagree.

¶37. The circuit court correctly determined that the additional notice requirement of subsection (4) only applied to Penn-Star and South Delta, not SDBT or Finance. By subsection (4)'s plain language, any additional notice is limited to the insurer, Penn-Star, and to third parties other than the insured, namely the mortgage holder, South Delta. Penn-Star was required, and did, provide thirty days' notice of cancellation to South Delta. Moreover, notice could only be given after the PFC cancelled the policy on behalf of the insured (SDBT), meaning notice to third parties (South Delta) is triggered by the cancellation of the insured's interest.

¶38. Finance and Penn-Star cite as instructive *Alexander v. AIG Agency Auto Ins.*, 138 So. 3d 190 (Miss. Ct. App. 2013). In *Alexander*, this Court held that an automobile insurer's failure to provide statutory notice of cancellation of a policy to a lienholder did "not negate proper cancellation as to the insured." *Id.* at 198 (¶22) (quoting *Bryce v. St. Paul Fire & Marine Ins. Co.*, 783 P.2d 246, 247 (Ariz. Ct. App. 1989) (internal quotation mark omitted)). The automobile insurer sent the insured, but not the automobile lienholder, written notice of intent not to renew the insured's policy. *Id.* at 191-92 (¶1). About one month later, the

insured was involved in a vehicular accident. *Id.* at 192 (¶2). The insurer denied coverage because the policy was no longer in effect. *Id.* The insured argued the insurer improperly cancelled the policy because notice was not given to the lienholder, as required by Mississippi Code Annotated section 83-11-7 (Rev. 2011).[10] *Id.* at 195-96 (¶16). This Court rejected the insured's argument, holding the insured received proper notice under the statute and could not benefit from additional notice owed to the lienholder. *Id.* at 198 (¶23). As authority, we cited caselaw from other jurisdictions interpreting standard mortgage clause statutes. *Id.* at (¶22). For example, in *Bryce*, the Arizona appellate court held "[f]ailure to give proper notice to a mortgagee is a defense to cancellation of a policy available to that mortgagee. However, that defense is not available to the insured." *Id.* (citing *Bryce*, 783 P.2d at 247). Consequently, the *Bryce* court "held that there was no coverage at the time of the loss since the insured's policy interest 'was properly cancelled.'"[11] *Id.* Although *Alexander* involved a non-renewal of an automobile insurance policy as opposed to

---

[10] This statute provides, "No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in the policy *and to the named creditor loss payee*, at least thirty (30) days' advance notice of its intention not to renew." Miss. Code Ann. § 83-11-7 (Rev. 2022) (emphasis added).

[11] As noted in *Alexander*, other jurisdictions have held similarly: *Western Express Inc. v. Interested Underwriters at Lloyd's, London*, 942 S.W.2d 542, 544 (Tenn. Ct. App. 1996) (Although statutory authority "might provide a defense to cancellation for the lienholder[,] . . . the failure to notify the lienholder d[oes] not provide a defense to the insured."); *Wisniewski v. State Farm Gen. Ins. Co.*, 609 P.2d 456, 458 (Wash. Ct. App. 1980) (A statutory notice of cancellation of a fire-insurance policy mailed to the insureds was effective as to them even though the insurer did not mail notice of cancellation to the lienholder.).

cancellation of property insurance, this Court's reasoning is nonetheless applicable here.[12]

Our statutory and caselaw do not allow SDBT to avoid the impact of its default and benefit from the additional notice Penn-Star had to give the lienholder South Delta. SDBT was fully aware of the default (as it had not made its payments) and had been given ten days to cure the default; then cancellation was made "as if" SDBT had sent the notice. Its lienholder, South Delta, however, was unaware of the default until Penn-Star sent notice of cancellation to South Delta; by that time, the hail damage had already occurred.

¶39. Moreover, SDBT's argument that subsection (4)'s language only refers to one insurance contract, and therefore SDBT's interest cannot be separately cancelled from South Delta's interest, is without merit. As explained above, South Delta obtained a separate interest in the policy at its inception when SDBT purchased the policy. Further, subsection (1) of the PFC cancellation statute refers to cancellation of "any insurance contract or contracts" singular or plural, which are listed in the premium finance agreement. There is no indication that the Legislature's intent was to limit "the insurance contract" to the singular or to imply that there could be only one cancellation date for all interested persons.

### III. Section 83-13-9 – The Standard Mortgage Clause Statute

¶40. The circuit court found section 83-13-9 "clearly contemplates separate dates of cancellation" for SDBT's and South Delta's interests in the policy. We agree. Due to this

---

[12] The statute at issue in *Alexander*, section 83-11-7, is substantially similar to the first sentence of section 83-5-28. *Compare* § 83-5-28 *with* § 83-11-7 ("No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in the policy and to the named creditor less payee, at least thirty (30) days' advance notice of its intention not to renew.").

interrelation of sections 83-13-9 and 81-21-19, Finance had a mechanism to cancel SDBT's interest in the policy once SDBT defaulted on its loan payment while protecting the separate interest of South Delta.

¶41.   SDBT acknowledges that the standard mortgage clause is in almost every property insurance policy where the property is encumbered by a mortgage.  SDBT also agrees that its deed of trust to South Delta included such a clause.  However, SDBT contends the standard mortgage clause statute only applies when a policy is cancelled by an insurer and not when it is cancelled by an insured or PFC.  Therefore, SDBT concludes that the statute does not apply here because the policy was cancelled by Finance and not Penn-Star.

¶42.   Courts have interpreted the standard mortgage clause as creating a separate contract of insurance between the mortgage holder/mortgagee and the insurer. *Hudson Specialty Ins. Co. v. Talex Enters. LLC*, No. 5:17-cv-137-DCB-MTP, 2018 WL 3594996, at *1 (S.D. Miss. July 26, 2018) (citing *Lumbermens Mut. Cas. Co. v. Thomas*, 555 So. 2d 67, 69 (Miss. 1989); *see also United States Fid. & Guar. Co. v. Arrington*, 255 So. 2d 652, 655 (Miss. 1971) ("The effect of this statute is to make the contract between the insurance company and the mortgagee a new and independent contract." (quoting *Bacot v. Phenix Ins. Co.*, 96 Miss. 223, 241-42, 50 So. 729, 732-33 (1909))).  "That way, a mortgage holder's right to recover under an insurance policy is not negated by the conduct of the mortgagor." *Hudson Specialty*, 2018 WL 3594996, at *1.  Moreover, Mississippi provides that the interest in the mortgage holder attaches at the outset of the insurance policy formation. *Tolar v. Bankers Tr. Sav. & Loan Ass'n*, 363 So. 2d 732, 735 (Miss. 1978).  Finally, the "independent contract

23

in favor of the mortgagee . . . is not impaired by any act or neglect of the mortgagor or owner of the property." *Nat'l Sec. Fire & Cas. Co. v. Mid-State Homes Inc.*, 370 So. 2d 1351, 1353 (Miss. 1979) (citing *Bacot*, 96 Miss. at 242-43, 50 So. at 733). Under the above caselaw, South Delta had a separate and independent interest in the Penn-Star policy as soon as SDBT purchased the policy.

¶43. SDBT finds error with the circuit court's ruling that SDBT and South Delta had two separate contracts/policies of insurance that could be cancelled on separate dates, labeling it a "legal fiction." SDBT contends that the plain language of the standard mortgage clause statute states it only applies when cancellation is by the "[insurance] company,"[13] but SDBT provides no authority for this position. Additionally, SDBT claims the statute's language does not speak in terms of separate insurance policies but, rather, only one policy that "shall continue in force for the benefit" of the mortgage company. SDBT discounts *Lumbermens*'s statement on separate insurance contracts between the insurer and mortgage company because there is no statute that requires an insured and a mortgage company to submit separate proofs of loss. Furthermore, SDBT argues the statutory clause only applies in "certain circumstances"; for example, where the mortgage holder must submit its own

---

[13] SDBT appears to be citing the part of the mortgage clause that states:

> This *company* reserves the right to cancel this policy at any time as provided by its terms, but in such case *this policy shall continue in force* for the benefit only of the mortgagee (or trustee) for thirty (30) days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this company shall have the right on like notice to cancel this agreement.

Miss. Code Ann. § 83-13-9 (emphasis added).

24

independent proof of loss to file a claim for losses under the policy, as found in *Hudson Specialty*.

¶44. Finance counters that SDBT's argument ignores the plain language of the standard mortgage clause statute that provides when a policy is cancelled by an act of the insured, the policy remains in place for the mortgage company until the insurer cancels the mortgage holder's interest after thirty days' notice. Thus, SDBT's default on its loan payment caused Finance to cancel the policy on SDBT's behalf, which triggered the standard mortgage clause. Moreover, as Finance points out, *Hudson Specialty* supports its argument, not SDBT's argument—that the mortgage company had to submit its own proof of loss demonstrates that the mortgage company has an interest in the insurance policy separate and distinct from the mortgage holder. *Hudson Specialty*, 2018 WL 3594996, at *1.

¶45. The standard mortgage clause statute applies because the cancellation of South Delta's interest in the policy was done by Penn-Star through Beasley General under section 81-21-19(4). Penn-Star provided South Delta with thirty days' notice of the cancellation of South Delta's interest in the policy when Beasley General mailed its notice of cancellation of insurance to South Delta, notifying South Delta that April 18, 2018, was the cancellation date of the policy.[14] While SDBT cancelled its policy through its attorney-in-fact, Finance, under section 81-21-19(3), Finance could not cancel South Delta's interest because that cancellation had to derive from Penn-Star, under section 81-21-19(4). The thirty-day notice

_____

[14] An argument could be made that only ten days' notice was due South Delta under the mortgage clause, as the cancellation was the result of SDBT's nonpayment of premiums to Finance. Penn-Star, however, erred on the side of caution and gave South Delta the full thirty days' notice. *See supra* ¶26.

25

of cancellation to South Delta did not extend to SDBT's previously cancelled interest in the policy.

¶46. Penn-Star cites in support *James Allen Insurance Brokers v. First Financial Bank*, 267 So. 3d 759 (Miss. 2019). In *James Allen*, a bank held a mortgage on a couple's poultry farm. *Id.* at 760 (¶2). The insurance broker provided the couple a binder, or contract for temporary insurance. *Id.* at 761 (¶4). In order to pay the insurance premium, the couple entered into a finance agreement with a premium financing company, where they would pay a portion of the premium, and the company would pay the rest. *Id.* at (¶7). The broker claimed it never received the premium for the policy, and three days after the binder of coverage expired, the poultry farm caught on fire. *Id.* at 762 (¶12). The bank/morgagee did not receive any notice of cancellation of the coverage; even so, the broker and the insurer denied the bank's claim for coverage due to the cancellation after the failure to receive the premium. *Id.* at (¶¶14-15). The Mississippi Supreme Court held that because the broker and the insurer did not provide the bank/mortgagee with notice of cancellation as required under sections 83-13-9 and 83-5-28(1),[15] coverage was improperly cancelled. *Id.* at 763, 765 (¶¶24-26, 36). In its analysis, the supreme court, like the district court in *GuideOne*, *see supra* n.15, found the interests of the insured and mortgagee were separate under the two statutes and could be cancelled separately. Accordingly, SDBT's argument that its interest on the policy could not be cancelled prior to the cancellation of South Delta's interest is

---

[15] In *GuideOne Elite Insurance Co. v. Mount Carmel Ministries*, No. 2:13-cv-134-KS-MTP, 2015 WL 72139, at *1, *3 (S.D. Miss. Jan. 6, 2015), there was no failure by the insured to pay the premium; therefore, there was no issue where the ten days' notice, instead of thirty, would apply.

26

incorrect.

### IV. Section 83-5-28(1) – Mandatory Notice for Cancelling Insurance

¶47. Section 83-5-28(1), which provides mandatory notice provisions for cancellation of insurance, requires that the insurer provide the insured with either ten days' (nonpayment of premium if there is a creditor loss payee) or thirty days' (all other cases) notice of cancellation. The circuit court held this Code section did not apply to SDBT's claims because "Finance's March 8, 2018 cancellation of the policy must be considered as if SDBT itself had submitted the cancellation of its policy" under section 81-21-19(3). Accordingly, SDBT was not entitled to receive any further notice of cancellation other than what Finance already provided to SDBT.

¶48. SDBT argues that this code section applies to it and Finance, citing the following language from the statute: "Cancellation . . . is not effective as to *any coverage* . . . unless notice is mailed or delivered to the insured *and* [the] named creditor . . . ." Miss. Code Ann. § 83-5-28(1) (emphasis added). SDBT claims section 81-21-19 "incorporates by reference the mandatory notice requirements of [section] 83-5-28" regarding cancellation of insurance coverage; therefore, Finance could not cancel the policy until notice was given to SDBT *and* South Delta.

¶49. In support of its argument, SDBT cites *GuideOne*, where a district court found an insurer's failure to comply with the thirty-day statutory notice requirements rendered a notice of cancellation ineffective under section 83-5-28. *GuideOne*, 2015 WL 72139, at *1. *GuideOne* involved whether a commercial property insurance policy was in effect after a

27

tornado damaged a church. *Id.* Subsequently, the insurer had cancelled the church's property insurance policy, sending a notice of cancellation to the church/insured and its mortgage company, but gave only twenty-three days' notice. *Id.* The district court held the notice of cancellation to the insured was ineffective because it did not give the required thirty-days' notice required under section 83-5-28. *Id.* at *3. SDBT claims *GuideOne* supports its proposition that "[t]he statutory requirement of notice to the insured *and* the mortgage company must be applied as written," meaning the insured's interest cannot be cancelled separately from the mortgage company's interest. SDBT ignores, however, an important part of section 81-21-19(4) that incorporates statutory provisions regarding notice "to a governmental agency, mortgagee or third party other than the insured" and that the insurer make "the prescribed notice on behalf of itself or the insured to any governmental agency, mortgagee or other third party." Neither phrase provides for any further notice *to* the insured.

¶50. Further, *GuideOne* does not support SDBT's position. The district court applied section 83-5-28 to the insured's and the mortgage company's interests in the policy separately. *GuideOne*, 2015 WL 72139, at *6. The district court noted that the insurer did "not dispute that the policy's provision requiring notice of cancellation to the mortgagee constitutes a 'separate contract of insurance entered into between the mortgagee and the insurer.'" *Id.* (quoting *Weems v. Am. Sec. Ins. Co.*, 450 So. 2d 431, 436 (Miss. 1984)). Like the standard mortgage clause statute, section 83-5-28 allows for the insured's interest in the policy to be cancelled separately from the mortgage company's interest. Further, *GuideOne*

28

is distinguishable because section 81-21-19 was not applicable.[16]

**CONCLUSION**

¶51.  The trial court properly applied the PFC cancellation statute to find, as a matter of law, that SDBT's interest in the policy was cancelled, effective March 8, 2018, and South Delta's separate interest in the policy was cancelled on April 18, 2018.  Therefore, SDBT did not have coverage for the March 10, 2018 hailstorm, but South Delta did have coverage. Finance and Penn-Star properly complied with section 81-21-19.  Specifically, Finance properly complied with subsections (2) and (3) of the PFC cancellation statute by issuing a notice of cancellation to SDBT.  This notice of cancellation had the same legal effect as if SDBT had cancelled the interest in the policy itself, effective March 8, 2018.  The cancellation of SDBT's interest triggered subsection (4), which did not apply to Finance or SDBT.  Therefore, Penn-Star, not Finance, had to provide South Delta, not SDBT, notice of cancellation in order to protect South Delta's separate interest in the policy.  As noted by

---

[16]  SDBT also claims that Finance "forgot about" South Delta "and set the wrong cancellation date."  SDBT claims that during the president of Finance's Rule 30(b)(6) deposition, he admitted that anyone "knowing the law" would understand that Finance would have "to give a little more notice to" South Delta before the policy could be cancelled. *See* M.R.C.P. 30(b)(6).  The president clarified, however, that Beasley General Agency would have to "give . . . more notice" to the mortgagee.  The president also testified that he did not remember or "know about" South Delta until the "lawsuit came about." SDBT concludes that this testimony indicates the defendants "dropped the ball on selecting the appropriate cancellation date" for the policy.  We disagree.  SDBT is mixing the parties Finance and Penn-Star.  That Finance did not "know about" South Delta makes sense because Finance only issues loans to insureds for the policy premium; it has no need to know about the mortgage companies/lenders.  Once SDBT defaulted on its loan, Finance only had to notify Penn-Star of the cancellation, and Penn-Star then notified South Delta.  Therefore, Finance did not "drop the ball."  SDBT fails to recognize there are two separate cancellation dates.

Penn-Star, whether the notice requirements of section 81-21-19(4) come from section 83-13-9 or section 83-5-28(1), the PFC's notice of cancellation to the insurer operates to cancel the insured's interest under subsection (3); whereas the mortgage company's separate interest in the policy is cancelled by the insurer upon providing the notice to the company under subsection (4). Accordingly, we affirm the circuit court's judgment in favor of Finance and Penn-Star.

¶52. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McCARTY, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**